# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CRESTBROOK INSURANCE COMPANY, | |
| Plaintiff, | No. 19-cv-01833 |
| v. | Judge John F. Kness |
| ALAN FREEMAN and ARLYNN FREEMAN, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

This declaratory judgment lawsuit concerns an insurance claim over the loss of a large diamond ring. Plaintiff Crestbrook Insurance Company seeks a judicial declaration that it is not required to indemnify Defendants Alan Freeman and Arlynn Freeman for the 2018 loss of a diamond ring that, Defendants say, slipped out of Alan Freeman's grasp and fell down a bathroom sink drain. Although Plaintiff had issued an insurance policy to Defendants, Plaintiff denied coverage for the loss because it found that the ring was not, as required by the relevant Personal Collections Insurance Policy, being "worn" at the time of the loss.

Plaintiff now moves for judgment on the pleadings, contending that the Policy language precludes coverage under the facts as presented by Defendants in their coverage claim. Upon review of the parties' arguments and the record, however, the Court disagrees: whether Alan Freeman was, within the meaning of the Policy, wearing the ring at the time of the alleged loss presents a question that must be

resolved by the factfinder. Plaintiff's motion for judgment on the pleadings is therefore denied.

I. **BACKGROUND**

On May 22, 2018, Alan Freeman retrieved his spouse Arlynn Freeman's 6.63ct pear-shaped diamond ring out of the couple's safe so that, he says, he could clean the ring with a toothbrush while standing over an open bathroom sink drain.[1] (Dkt. 29 at 1.) Perhaps unsurprisingly, the ring slipped out of Alan Freeman's hand and fell down the drain. (*Id*. at 1-2.) Both Alan Freeman and a maintenance worker attempted without success to recover the ring. (*Id*. at 2.) In a sworn statement, Alan Freeman stated that, at the time of the loss, the ring was secured between his thumb and left index finger. (*Id*. at 2.)

Exactly how the ring was lost matters because of the terms of the applicable insurance policy. In December 2015, Plaintiff issued a Personal Collections Insurance Policy (the "Policy") to Defendants. Among other items, the Policy covered the 6.63ct ring that Alan Freeman lost down the drain. (Dkt. 1-2 at 9.) Per the Policy, the ring— and other jewelry identified in the Policy—would not be covered "unless, at the time of loss, the jewelry is being worn by you, or is contained in a locked safe at your residence." (*Id*. at 9.) It is uncontested that the Policy was valid at the time of the loss.

---

[1] On a motion for judgment on the pleadings, the court must construe the complaint's allegations liberally in favor of the insured. *Berg v. New York Life Ins. Co.*, 831 F.3d 426, 430 (7th Cir. 2016). In their response brief, Defendants admit that they "do not dispute the facts of record in Plaintiff's motion for judgment on the pleadings but do object to the characterization of the facts," including "whether the ring was being worn at the time of the loss and the interpretation of the term worn or to wear." (Dkt. 33 at 2.) The Court thus accepts the facts as recited by Plaintiff.

2

Defendants filed a claim for coverage with Plaintiff shortly after Alan Freeman dropped the ring. (Dkt. 1 at 3.) Plaintiff investigated the incident and took Alan Freeman's deposition. (*Id.*) Following that investigation, Plaintiff denied the claim and explained that the ring was not, as required for coverage to kick in, either located in a locked safe or "being worn" by Alan or Arlynn Freeman at the time of the loss. (*Id.*) Shortly after denying the claim, Plaintiff filed this declaratory judgment action seeking a declaration that the Policy does not provide coverage for the lost ring. (*Id.*) After Defendants answered the complaint (Dkt. 22), Plaintiff moved for judgment on the pleadings (Dkt. 29), contending that there were no factual disputes and that Plaintiff was entitled to judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.

## II.   LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move for judgment after both the plaintiff's complaint and the defendant's answer have been filed. Fed. R. Civ. P. 12(c). Rule 12(c) motions are reviewed under the same standard as Rule 12(b)(6) motions to dismiss. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007). As with a motion to dismiss, the court must construe the complaint's allegations liberally in favor of the insured. *Berg v. New York Life Ins. Co.*, 831 F.3d 426, 430 (7th Cir. 2016). To succeed on a motion for judgment on the pleadings, the moving party "must demonstrate that there are no material issues of fact to be resolved." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). This standard is demanding and requires a showing "beyond doubt" that the nonmovant cannot prove any facts that support its claim for relief. *Id.* at 452.

The parties agree that, because the case was brought under the Court's diversity jurisdiction, Illinois law governs this dispute. *Miniat v. Ed Miniat, Inc.*, 315 F.3d 712, 714 (7th Cir. 2002). Illinois law establishes that, in construing an insurance policy, a court's primary task is to ascertain the intent of the parties as expressed in their agreement. *Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1017 (Ill. 2010). If the terms in a policy are unambiguous, the construction of those terms is a question of law—and the terms are given their plain and ordinary meaning. *Id*. Where a court determines that a contract is ambiguous, however, its construction is a question of fact; parol evidence is then admissible to explain and ascertain what the parties intended. *See, e.g., Highland Supply Corp. v. Ill. Power Co.*, 973 N.E.2d 551, 558 (Ill. App. Ct. 2012); *Bradley Real Estate Trust v. Dolan Assocs. Ltd.*, 640 N.E.2d 9, 11-12 (Ill. App. Ct. 1994) ("If the language is ambiguous, extrinsic evidence is admissible to determine the parties' intent and the interpretation of the language is a question of fact"); *see also Air Safety, Inc. v. Tchr's Realty Corp.*, 706 N.E.2d 882, 884 (Ill. 1999) ("If . . . the trial court finds that the language of the contract is susceptible to more than one meaning, then an ambiguity is present. Only then may parol evidence be admitted to aid the trier of fact in resolving the ambiguity"); *Hubbard St. Lofts LLC v. Inland Bank*, 963 N.E.2d 262, 317-18 (Ill. App. Ct. 2011) ("It is well established that if a contract is ambiguous, it presents a question of fact . . . ").

Other provisions of Illinois law are also relevant to this insurance dispute. Ambiguous policy terms, for example, are strictly construed against the insurer. *See Country Mut. Ins. Co. v. Peoples Bank*, 675 N.E.2d 1031, 1032 (Ill. App. Ct. 1997). Moreover, any underlying insurance policy "must be liberally construed in favor of

4

the insured." *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 930 (Ill. 1991). In particular, terms that limit or exclude coverage "will be interpreted liberally in favor of the insured and against the insurer." *Am. States Ins. Co. v. Koloms*, 687 N.E.2d 72, 75 (Ill. 1997) (citing *Nat'l Union Fire Ins. Co. v. Glenview Park Dist.*, 632 N.E.2d 1039, 1041 (Ill. 1994)).

## III. DISCUSSION

Both sides agree on the central question in this case: was Alan Freeman wearing the ring at the time it was lost? Plaintiff contends the Policy term "being worn" is unambiguous and should be given its plain and ordinary meaning. (Dkt. 29 at 5; 1/7/2021 Oral Argument (hereinafter "1/7/2021 OA").) According to Plaintiff, the plain and ordinary meaning of "being worn" requires at least that the insured item be borne as "clothing, decoration, protection adornment or assistance." (Dkt. 29 at 6 (cleaned up).) In support, Plaintiff cites definitions of "wear" contained in both the Oxford English Online Dictionary and the Merriam-Webster Online Dictionary. (*Id.* at n. 2-3.) According to Plaintiff, Oxford defines "wear" as to "have something on one's body as clothing, decoration, or protection." (*Id.* at 5.) Plaintiff also cites the Merriam-Webster Online Dictionary, which defines the transitive verb "wear" in part as "to use for clothing, adornment or assistance." (*Id.* at 5-6.)

From these authorities, Plaintiff concludes that, for coverage to exist under the Policy, the insured article must both be physically present on an insured person *and* the person must have some purpose for bearing that item. As counsel contended at oral argument, to "wear" is defined in a two-factor way: namely, the item must be (1) on the person's body, and (2) for *the purpose of* clothing, decoration, or protection.

5

(1/7/2021 OA; *see also* Dkt. 29 at 6.) Put another way, Plaintiff would require an element of intent before an article can be considered "worn" by an insured under the Policy.

With due respect to Plaintiff's argument, the Court agrees with Defendants that, because "being worn" is ambiguous and requires factual exploration, this case is not amenable to resolution on a motion under Rule 12(c). (Dkt. 33 at 5-7; 1/7/2021 OA.) To be sure, Plaintiff's view of "being worn" is reasonable, but it is neither compelled by the plain language of the Policy nor the only reasonable construction of that phrase. In reaching this holding, the Court is, like Plaintiff, informed by dictionary sources. But those sources suggest that the transitive verb "wear" has several other meanings that undermine Plaintiff's construction. For example, "wear" can mean simply "to bear or have on the person." Merriam-Webster's Collegiate Dictionary p. 1334 (10th Ed. 2001); *see also Wear,* Merriam-Webster Online Dictionary (2021 Merriam Webster, Inc.), https://www.merriam-webster.com/dictionary/wear (last visited 6/17/2021). "Wear" can also mean "to carry on the person." *Id*. And the Cambridge Dictionary defines "wear" plainly as "to have clothing, jewelry, etc. on your body." *Wear*, Cambridge Online Dictionary (Cambridge University Press 2021), https://dictionary.cambridge.org/us/dictionary/english/wear (last visited 6/17/2021).

In the Court's view, these varied definitions establish that Plaintiff's construction of "being worn"—which Plaintiff says includes an element of purpose—is not the only reasonable view of the phrase. Under the cited definitions, an individual can bear an item on their person without needing any specific "purpose of

6

clothing, decoration, or protection." An individual could, for example, begin an outdoor hike while wearing a sweatshirt but later take it off and drape it around their shoulders merely to carry it home. In that circumstance, a rational observer could find that the sweatshirt was "being worn" by the hypothetical hiker without also needing to find, as Plaintiff's construction would require, that they bore the sweatshirt for the *purpose* of clothing, decoration, or protection. (1/7/2021 OA.) *See, e.g.*, *Wear,* Merriam-Webster Online Dictionary (2021 Merriam Webster, Inc.), https://www.merriam-webster.com/dictionary/wear (last visited 6/17/2021) (defining "wear" as "to bear or have on the person" or "to carry on the person").

This example is hypothetical, certainly, but it is intended to illustrate that "being worn" can be reasonably interpreted in more than one way. Whether one version or another is better, however, is not for the Court to decide at this stage; that decision must be left to the factfinder. *Air Safety, Inc.*, 706 N.E.2d at 884.

Plaintiff puts great weight on Alan Freeman's admission that the ring had merely been "pinched" between "his thumb and index finger" before it fell down the drain (Dkt. 29 at 6.) According to Plaintiff, Alan Freeman's admission establishes that the ring was not "being worn" at the time of the loss. As an initial matter, because the Court must look at the complaint, answer, and any attached exhibits in considering a motion for judgment on the pleadings, *Federated Mut. Ins. Co. v. Coyle Mech. Supply, Inc.*, 983 F.3d 307, 312 (7th Cir. 2020),[2] it is proper to consider this

---

[2] Exhibits include the deposition of Alan Freeman and the insurance policy at issue. (Dkt. 1-1, 1-2.) Alan Freeman's affidavit (Dkt. 33, Ex. A), which was submitted by Defendants in response to the present motion, cannot be considered on a motion for judgment on the pleadings without converting the motion to a motion for summary judgment. *Federated Mut.*

7

admission. But the statement does not help Plaintiff's argument: given the existence of reasonable alternative constructions of "being worn," the Court cannot award judgment merely because Alan Freeman said he pinched the ring instead of placing it on one of his fingers. *See Air Safety, Inc.*, 706 N.E.2d at 884.

Bearing in mind the heightened burden for judgment on the pleadings, *N. Ind. Gun & Outdoor Shows*, 163 F.3d at 452, the Court finds that the relevant pleadings foreclose Plaintiff's motion. In making this judgment, the Court offers no predictions: the factfinder may indeed determine that the ring was not "being worn" by Alan Freeman and thus that Plaintiff does not owe coverage. Either way, because the phrase "being worn" is susceptible to more than one construction, the case must continue past the pleading stage. Accordingly, Plaintiff's motion is denied.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Judgment on the Pleadings is denied.

SO ORDERED.

Date: June 21, 2021

_____
JOHN F. KNESS
United States District Judge

---

*Ins. Co.*, 983 F.3d at 312. Because there is ambiguity in the Policy, converting this motion into one seeking summary judgment would be inappropriate.

8